UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:  THE LAW OFFICES OF WHITE & ASSOCIATES, PLLC,<br><br>Debtor | Case No.<br>15-36223-KRH |
| LYNN L. TAVENNER, TRUSTEE,<br><br>Plaintiff | Chapter<br>7<br>Adv. Proc No. |
| MARK F. WHITE,<br>NNIKA E. WHITE,<br><br>Defendants | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES ASSOCIATED WITH THE WILLFUL VIOLATION OF THE AUTOMATIC STAY, AND TO THE EXTENT NECESSARY, RELIEF FROM THE AUTOMATIC STAY

Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Corporate Estate") of The Law Offices of White and Associates, PLLC (the "Corporate Debtor" and/or the "PLLC"), by undersigned counsel, for her complaint (the "Complaint") against Mark F. White and Nnika E. White (the "Individual Debtors" and/or "Defendants"), alleges as follows:

### NATURE OF THE ACTION

The Trustee, pursuant to 11 U.S.C. §§ 105, 362, 542 and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Rules") brings this action seeking entry of an Order: (A) to the extent necessary, granting the Trustee relief from the automatic stay such that she might bring this Complaint and obtain the relief requested herein; (B) enjoining the

Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*

Defendants from using and/or disposing any and all corporate property, including but not limited to: hard drives, any storage media, desktop computers, laptop computers, servers, computer related equipment, server related equipment, televisions, monitors, safes and/or safe deposit boxes, records of cash receipts, client files both hard copy and electronic, bank statements and records, invoices, records of accounts receivable, all electronic data in any form located on the premises of the Corporate Debtor or in any off site backup location or storage facility, and any other materials, information, or records, both tangible and intangible related to the operation of the Corporate Debtor's business affairs and/or containing information pertaining to the Corporate Debtor (collectively the "Corporate Property"); (C) enjoining the Defendants from discarding or concealing any information contained in the Corporate Property; (D) compelling the Defendants to turnover to the Trustee the Corporate Property; (E) awarding the Trustee damages associated with the Defendants' willful violation of the automatic stay. The Trustee has filed simultaneously herewith a Motion For Ex Parte Relief/Temporary Restraining Order (the "Ex Parte Motion") to (A) obtain possession of the Corporate Property; and (B) to protect and preserve said Corporate Property on an ex parte basis due to the easily disposable nature of the items sought and history of the Defendants' actions.

## JURISDICTION

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue lies properly in this Court pursuant to 28 U.S.C. § 1409.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157.

## THE PARTIES

4.      The Plaintiff is Lynn A. Tavenner, the Chapter 7 Trustee of the Corporate

Debtor's Estate who was appointed as interim Trustee on December 4, 2015, and continues to

serve.

5.      On information and belief, defendant Mark F. White is an individual, currently

residing at 4600 Jennway Loop, Moseley, VA 23120.

6.      On Information and belief, defendant Nnika E. White is an individual, currently

residing at 4600 Jennway Loop, Moseley, VA 23120.

## Background

7.      On or about September November 19, 2014, the Individual Debtors commenced a

case by filing a voluntary petition for relief under chapter 13 of Title 11 of the United States

Code (the "Bankruptcy Code"), case number 14-36232-KRH (the "Individual Case").

8.      On December 11, 2014, the Individual Debtors filed their first Chapter 13 Plan of

reorganization (the "First Plan").

9.      On January 14, 2015, the chapter 13 trustee filed her objection to the First Plan

(the "First Plan Objection"), alleging that the First Plan was not filed in good faith, which

hearing was set for January 21, 2015.

10.      At the January 21, 2015, hearing on the First Plan Objection, the same was

continued to February 18, 2015.

11.      At the February 18, 2015, hearing on the First Plan Objection, the same was

continued to March 18, 2015.

12.     At the March 18, 2015 hearing, the First Plan Objection was sustained, and an order denying confirmation was entered.

13.     On April 7, 2015, the Individual Debtors filed a second Chapter 13 Plan of reorganization (the "Second Plan").

14.     On May 6, 2015, a secured creditor of the Individual Debtors filed its objection to the Second Plan (the "Secured Creditor Objection to the Second Plan").

15.     Also on May 6, 2015, the Office of the United States Trustee (the "UST"), filed its limited objection the Second Plan (the "UST Limited Objection to the Second Plan"), expressing concerns as to the accuracy of the Individual Debtors' schedules.

16.     At the May 13, 2015 hearing on both the Secured Creditor Objection to the Second Plan and the UST Limited Objection to the Second Plan, the same were continued to June 10, 2015.

17.     On June 9, 2015, the Individual Debtors filed a third Chapter 13 Plan of reorganization (the "Third Plan").

18.     The Third Plan resulted in the cancellation of the June 10, 2015 hearing, as the Secured Creditor Objection to the Second Plan and the UST Limited Objection to the Second Plan were now moot.

19.     On June 15, 2015, Nnika E. White ("White"), filed a motion in her capacity as legal counsel requesting that she substitute herself as attorney of record for the Individual Debtors (the "White Motion").

20.     The White Motion was granted by entry of an Order on July 8, 2015, and the Individual Case proceeded with only White as counsel of record.

21.     On July 17, 2015, the UST filed its objection to the Third Plan (the "UST Objection to the Third Plan"), the same being set for a hearing on July 22, 2015.

22.     The July 22, 2015 hearing on the UST's Objection to the Third Plan was continued to September 2, 2015.

23.     The September 2, 2015 hearing on the UST's Objection to the Third Plan was continued a second time to October 14, 2015.

24.     On October 13, 2015, White filed the Individual Debtors fourth Chapter 13 Plan of reorganization (the "Fourth Plan").

25.     The October 14, 2015 hearing on the UST's Objection to the Third Plan was heard. Neither the Individual Debtors nor White appeared (or any other counsel on their behalf). At the conclusion of the hearing, the Court, sua sponte, ordered White to show cause why she should not be sanctioned for violations of the Bankruptcy Code and Bankruptcy Rules.

26.     The Order to Show Cause was entered on October 20, 2015, and set for a hearing on November 4, 2015.

27.     Also on October 20, 2015, the chapter 13 trustee filed her motion to convert the Individual Debtors' case from a case under chapter 13 to one under chapter 7 of the Bankruptcy Code (the "Motion to Convert").

28.     On October 29, 2015, White filed the Individual Debtors fifth Chapter 13 Plan of reorganization (the "Fifth Plan").

29.     On November 4, 2015, a hearing was held on the Order to Show Cause and the Motion to the Convert, at the conclusion of which the Court took the matters under advisement.

30.     On November 5, 2015, the Court entered an order granting the Motion to Convert.

31.     On November 5, 2015, Bruce H. Matson was appointed Chapter 7 trustee of the Individual Case (the "Individual Trustee").

32.     Among the assets of the Individual Debtors' estate is 100 percent ownership of the PLLC.

33.     The Individual Trustee, on December 2, 2015, moved this Court for the authority to initiate a voluntary chapter 7 proceeding for the PLLC (the "Authority Motion").

34.     The Individual Trustee also filed a motion to expedite (the "Motion to Expedite") the hearing for the Authority Motion, which hearing was set for December 3, 2015 at 2:00 PM.

35.     At the hearing convened on December 3, 2015, the Motion to Expedite was granted, and the Court heard the Authority Motion.

36.     On information and belief, during the course of the December 3, 2015 hearing, White did testify under the penalty of perjury that she had not removed any of the Corporate Property from the PLLC other than pictures of her children.

37.     At the conclusion of the hearing, the Court granted the Individual Trustee the authority sought in the Authority Motion.

38.     At 4:47 PM on December 3, 2015, the Individual Trustee filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code (the "Corporate Case").

39.     Lynn L. Tavenner thereafter was appointed interim Trustee of the Corporate Case, and she continues to serve in that capacity.

## FACTS

40.     On the morning of December 4, 2015, the Trustee , with counsel, appeared at the

offices of the Corporate Debtor, located at 9101 Midlothian Turnpike, Suite 800, N. Chesterfield,

VA 23235 (the "Corporate Offices").

41.     The Trustee was met at the Corporate Offices by a locksmith and forensic

computer professional, both of whom are ready, willing, and able to testify.

42.     The locksmith had arrived before the Trustee, and related to the Trustee that a

woman matching a description of White had exited the Corporate Offices and approached him to

inquire about his presence in the parking lot.

43.     Upon learning that the locksmith was waiting for the Trustee, White reentered the

Corporate Offices.

44.     The locksmith heard the sound of equipment being moved and witnessed White

and a person matching the description of the PLLC's intern separately exit the property carrying

items from the Corporate Offices.

45.     A male matching the description of White's spouse, the other Individual Debtor,

was seen leaving the rear of the Corporate Offices carrying items from the Corporate Offices.

46.     Immediately upon entering the Corporate Offices, the Trustee found at the

receptionist station a computer resting on top of a desk with its hard drive missing, no monitor,

no papers, pencils, pens, or any other supplies one would expect in the front office of a law firm.

47.     The Trustee proceeded to move from room to room within the Corporate Offices

and was met with similar scenes: computers were either missing or left on the floor with parts

displaced and in some instances hard drives removed; desks were emptied of all supplies; one

office server was missing; at least one office safe had been removed; certain physical client files had been removed from the Corporate Offices; televisions had been removed from the walls, in essence, someone had raided the Corporate Offices and removed any Corporate Property of value.

48.     White's personal office was completely devoid of any Corporate Property that one could reasonably assume had been used in the exercise of the corporate business.

49.     Certain pictures of the Corporate Offices taken on December 4, 2015, in conjunction with the Trustee's examination of the Corporate Offices are attached hereto as Exhibit A.

50.     Following consultation with the UST, the Trustee contacted two former employees of the Corporate Debtor, both of whom are ready, willing, and able to testify. The former employees came to the Corporate Offices to assist the Trustee in securing and preserving assets of the Corporate Debtor's estate.

51.     With the assistance of these former employees, the Trustee was able to move from room to room within the Corporate Offices, looking for the client files, and other of the Corporate Debtor's property, and ascertaining that many items had been removed.

52.     The Trustee found a bin used in conjunction with a paper shredder that looked as though it had recently been emptied.

53.     Within another bin used in conjunction with a paper shredder, the Trustee found a redwell containing significant information related to a case of a client of the Corporate Debtor that had recently been converted from a case under Chapter 13 to a case under Chapter 7 for bad faith. The Trustee secured the file.

54.     During the course of the day, the Trustee, her agents, and/or clients who had arrived at the Corporate Offices witnessed White approach in a vehicle several times, and quickly drive away.

55.     Upon information and belief, White met on December 4, 2015, with a client of the Corporate Debtor at a location other than the Corporate Offices, and gave him his client file (or at least a portion of the same).

56.     Upon information and belief, White met another bankruptcy attorney on December 4, 2015, at a location other than the Corporate Offices, and gave her a client file (or at least a portion of the same).

57.     The Trustee learned, from the UST, a review of the Corporate Debtors' docket, and documents in the Corporate Offices, that the Corporate Debtor had several bank accounts at Wells Fargo Bank, N.A.

58.     After securing the premises and documenting the state of the Corporate Offices, the Trustee promptly visited a branch of Wells Fargo Bank, N.A.

59.     The Trustee was shown bank records for each of the Corporate Debtor's accounts. Each account had been drained of all funds and closed on December 2, 2015.

60.     Upon information and belief, White, after the filing of the Authority Motion, with the actual knowledge and notice that the Individual Trustee sought to file the Corporate Case, proceeded directly to a Wells Fargo Bank, N.A. branch and emptied the Corporate Debtor's bank accounts.

61.     Upon information and belief, one or both of the Individual Debtors left the hearing on the Authority Motion, having heard this Court's ruling on said motion with actual

knowledge that the Individual Trustee would promptly file the Corporate Case, and went to the

Corporate Offices where they willfully and maliciously systematically attempted to cover their

tracks by removing the entirety of the Corporate Property.

62.     On December 4, 2015, the Trustee filed an Application to Employ Tavenner &

Beran as Trustee's Counsel in the Corporate Case (the "Corporate Debtor Trustee Employment

Application").

63.     On December 4, 2015, the Trustee, with the help of the former employees,

modified the voice mail message of the Corporate Debtor's telephone line to direct all client

inquiries to the law firm of Tavenner and Beran, PLC.

64.     Upon information and belief, White contacted former employees of the Corporate

Debtor during the weekend of December 5 and 6, 2015, seeking passwords to email accounts.

65.     Upon information and belief, during the weekend of December 5 and 6, 2015,

White forwarded the Corporate Debtor's telephone line to a cell phone and/or another phone

over which she maintains control.

66.     Upon information and belief, during the weekend of December 5 and 6, 2015,

White caused the webpage of the Corporate Debtor to direct all client inquiries to a cell phone.

See Exhibit B, attached hereto.

67.     Upon information and belief, White sent information related to clients of the

Corporate Debtor to one or more attorneys on December 7, 2015.

## Causes of Action

### COUNT I
### (Relief from the Automatic Stay)

68.     The Trustee incorporates the facts asserted in paragraphs 1 through 67.

69.     The Individual Debtors are debtors under Chapter 7 of the Bankruptcy Code

having pending before this Court the Individual Case.

70.     As such, the automatic stay of 11 U.S.C. § 362 may be in effect.

71.     Pursuant to § 362(d)(1), the Trustee believes cause exists to allow the Trustee to

bring this Complaint against the Individual Debtors to demand the relief sought herein.

### COUNT II
### (Injunctive Relief)

72.     The Trustee incorporates the facts asserted in paragraphs 1 through 71.

73.     The Corporate Property, including, but not limited to, the computers, televisions,

servers, and hard drives: (a) are property that the Trustee may use, sell, or lease under the

Bankruptcy Code; and/or, (b) contain recorded information relating to the Corporate Debtor's

property and/or financial affairs.

74.     Injunctive relief: (a) compelling the Defendants to turn over the Corporate

Property, including, but not limited to, the computers, servers, hard drives, and any and all

electronic data either belonging to the Corporate Debtor and/or containing information pertaining

to the Corporate Debtor; and (b) enjoining the Defendants from using, disposing or otherwise

altering the Corporate Property, including, but not limited to, the computers, servers, hard drives,

and any and all electronic data or physical files belonging to and/or containing information about

the Corporate Debtor is necessary and/or appropriate to carry out the provisions of the

Bankruptcy Code.

75.    The Trustee is likely to succeed on the merits of this Complaint.

76.    No harm will be caused to the Defendants in granting the injunctive relief sought.

77.    The harm suffered by the Corporate Debtor (and to creditors) if the injunction is

not granted is great.

78.    The public interest is best served by preventing the Defendants from using,

disposing, and/or concealing assets that could either (a) belong to the Corporate Debtor's estate

and/or (b) contain information related to the Corporate Debtor's property and/or financial affairs.

**COUNT III**
**(Willful Violation of the Automatic Stay)**

79.    The Trustee incorporates the facts asserted in paragraphs 1 through 78.

80.    The Corporate Property, including, but not limited to, the computer, servers, hard

drives, electronic data, and physical files, as well as any recorded information contained on them,

are assets of the Corporate Debtor's estate.

81.    Corporate Property, including, but not limited to, the computer, servers, hard

drives, electronic data, and physical files contain recorded information relating to the Corporate

Debtor's property and/or financial affairs.

82.    White, having been present at the December 3, 2015 hearing, is certainly aware of

the Corporate Debtor's bankruptcy case.

83.    The Individual Debtors have willfully exercised control over property of the

Corporate Debtor's estate.

84.     Despite their awareness of the existence of the Corporate Debtor's pending bankruptcy case and despite White having testified under oath that she had not removed any Corporate Property other than pictures of her children, the Defendants intentionally raided the Corporate Offices and removed valuable Corporate Property in willful violation of the automatic stay of § 362.

85.     The Corporate Debtor has been damaged by the Individual Debtors control over property of the bankruptcy estate.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

(a)     Granting the Trustee, to the extent necessary, relief from the automatic stay in the Individual Case pursuant to section 362(d)(1);

(b)     Compelling the Individual Debtors to turn over the Corporate Property, including, but not limited to, the computers, servers, hard drives, and any and all electronic data and physical files either belonging to the Corporate Debtor and/or containing recorded information pertaining to the Corporate Debtor's property and/or financial affairs pursuant to sections 542(a) and (e) of the Bankruptcy Code,

(c)     Enjoining the Individual Debtors from using, disposing and/or otherwise altering the Corporate Property, including the computers, servers, hard drives, and any and all electronic data and physical files either belonging to the Corporate Debtor and/or containing recorded information pertaining to the Corporate Debtor's property and/or financial affairs pursuant to section 105 of the Bankruptcy Code and Rule 7065;

    (d)      Awarding the Trustee, on behalf of the bankruptcy estate, damages associated

with the Defendants' willful violation of the automatic stay; and,

    (e)      Granting such other relief as is just and appropriate under the circumstances.

LYNN L. TAVENNER, TRUSTEE

Dated: December 7, 2015

        By:    /s/ Paula S. Beran
                Paula S. Beran

Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-0178

    *Counsel for Lynn L. Tavenner, Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:   THE LAW OFFICES OF WHITE & ASSOCIATES, PLLC,<br><br>Debtor,<br><br>LYNN L. TAVENNER, TRUSTEE,<br><br>Plaintiff<br><br>MARK F. WHITE,<br>NNIKA E. WHITE,<br><br>Defendants | Case No.<br>15-36223-KRH<br><br>Chapter<br>7<br>Adv. Proc No. |

## **Verification of Lynn L. Tavenner**

I, Lynn L. Tavenner, Plaintiff in the above styled case have reviewed the Complaint. The allegations in said Complaint of which I have personal knowledge I believe to be true. Those allegations in said Complaint of which I do not have personal knowledge I believe to be true based on specific information, documents, and/or both.

I verify under penalty of perjury under the laws of the United States of America and the Commonwealth of Virginia that the foregoing is true and correct.

Dated: December 7, 2015

/s/ Lynn L. Tavenner
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-0178

Exhibit A



Exhibit A



Exhibit A



Exhibit A





Exhibit A



Exhibit A





Exhibit A

Exhibit A





Exhibit A



Exhibit A





Exhibit A





Exhibit A

Exhibit A





Exhibit A

Exhibit A



Exhibit A



Exhibit A



Exhibit A



Exhibit B

The Law Office Of White
& Associates
The Law Firm you can Trust

| Home +  |



HOME ⌄

 Law Office of White and Associates is no longer open for business.

Any questions regarding open cases please contact Nnika White at 804-274-9002.

*The information on this website should NOT be considered legal advice and receipt or viewing of this information does not constitute an attorney-client relationship.*

*The information on this website is for informational purposes only. Nothing on this site or on the accompanying pages herewith, in connection with documents, comments, answers, emails, or other communications should be taken as legal advice for any individual case or situation.*

*This information is not intended to create, and receipt of it does not constitute, an attorney-client relationship. DO NOT act upon this information without seeking professional counsel.  To obtain legal counsel or legal services from White and Associates PC, you must first establish an attorney-client relationship with one of the lawyers in our office.  Until you do so and receive a contract signed by counsel, you have not hired an attorney and have not become a client of the firm.*

*This website is not intended to be a source for legal advice, and you should not rely on any information provided in this website as such. Readers should not*

The information provided should not be an invitation for an attorney-client relationship, and should always seek the advice of competent counsel.  White and Associates may provide links to third party websites as a convenience. The inclusion of any link does not imply endorsement by White and Associates.

Except as expressly provided herein, White and Associates PC does not grant you any express or implied rights to the information or content provided on this website.

.

Home

9101 Midlothian Turnpike Suite 800 Richmond, VA 23235 Phone (804) 377-9431 Fax 804-377-9434