UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:  THE LAW OFFICES OF WHITE & ASSOCIATES, PLLC,<br><br>Debtor | Case No.<br>15-36223-KRH |
| LYNN L. TAVENNER, TRUSTEE,<br><br>Plaintiff | Chapter<br>7<br>Adv. Proc No. |
| MARK F. WHITE,<br>NNIKA E. WHITE,<br><br>Defendants | |

## MOTION FOR EX PARTE RELIEF/TEMPORARY
## RESTRAINING ORDER AND MEMORANDUM IN SUPPORT THEREOF

Comes now Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee"), in the case of The

Law Offices of White and Associates, PLLC (the "PLLC" and/or the "Corporate Debtor"), by

counsel, and pursuant to 11 U.S.C. §§ 105 and 542, and Rule 7065 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), moves the Court for entry of an Order: (A)

granting relief from the automatic stay, if necessary; (B) compelling Mark F. White and Nnika E.

White (together the "Individual Debtors" and each an "Individual Debtor") to turn over to the

Trustee (and enjoining action to exercise dominion, possession, and/or control over) any and all

property of the Corporate Debtor, including but not limited to: hard drives, any storage media,

desktop computers, laptop computers, other computerized, digital, or electronic devices, servers,

_____
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*

computer related equipment, server related equipment, any other computerized and/or electronic

media, televisions, computer monitors, email accounts, addresses, and related passwords, website

domain passwords and information, website hosting passwords and information, cell phones,

passwords for all devices (whether electronic or otherwise) of the Corporate Debtor, safes and/or

safe deposit boxes, records of cash receipts, client files both hard copy and electronic, bank

statements and records, invoices, records of accounts receivable, all electronic data in any form

of the Corporate Debtor (whether located on the premises of the Corporate Debtor, in the

possession and/or control of the Individual Debtors, in any off site backup location, storage

facility or otherwise) and any other materials, information, or records, both tangible and

intangible related to the operation of the Corporate Debtor's business affairs and/or containing

information pertaining to the Corporate Debtor (collectively the "Corporate Property"); (C)

enjoining the Individual Debtors from taking any action that would adversely impact the clients

of the Corporate Debtor; and, (D) otherwise compelling the protection and preservation of said

assets (the "Motion") in relation to the bankruptcy estate of the Corporate Debtor (the "Corporate

Estate"). The Trustee has filed simultaneously herewith a Complaint for Injunctive Relief and

Damages Associated with Willful Violation of the Automatic Stay (the "Complaint") seeking

entry of an Order: (A) granting relief from the automatic stay, if necessary; (B) enjoining the

Individual Debtors from using and/or disposing of any and all Corporate Property used by one or

more of the Individual Debtors to conduct any of the Corporate Debtor's business affairs and/or

containing information pertaining to the Corporate Debtor; (C) enjoining the Individual Debtors,

individually and collectively, from discarding or concealing any information contained in any of

the Corporate Property; (D) enjoining the Individual Debtors from taking any action that would

adversely impact the clients of the Corporate Debtor; and, (E) compelling the Individual Debtors immediately to turn over to the Trustee the Corporate Property, including but not limited to the hard drives, client records, server, computers, and all copies of the Corporate Property. In support of the Motion, the Trustee represents as follows:

**<u>Background</u>**

1. On or about September November 19, 2014, the Individual Debtors commenced a case by filing a voluntary petition for relief under chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"), case number 14-36232-KRH (the "Individual Case").

2. On December 11, 2014, the Individual Debtors filed their first Chapter 13 Plan of reorganization (the "First Plan").

3. On January 14, 2015, the chapter 13 trustee filed her objection to the First Plan (the "First Plan Objection"), alleging that the First Plan was not filed in good faith, which hearing was set for January 21, 2015.

4. At the January 21, 2015, hearing on the First Plan Objection, the same was continued to February 18, 2015.

5. At the February 18, 2015, hearing on the First Plan Objection, the same was continued to March 18, 2015.

6. At the March 18, 2015 hearing, the First Plan Objection was sustained, and an order denying confirmation was entered.

7. On April 7, 2015, the Individual Debtors filed a second Chapter 13 Plan of reorganization (the "Second Plan").

8.      On May 6, 2015, a secured creditor of the Individual Debtors filed its objection to the Second Plan (the "Secured Creditor Objection to the Second Plan").

9.      Also on May 6, 2015, the Office of the United States Trustee (the "UST"), filed its limited objection the Second Plan (the "UST Limited Objection to the Second Plan"), expressing concerns as to the accuracy of the Individual Debtors' schedules.

10.      At the May 13, 2015 hearing on both the Secured Creditor Objection to the Second Plan and the UST Limited Objection to the Second Plan, the same were continued to June 10, 2015.

11.      On June 9, 2015, the Individual Debtors filed a third Chapter 13 Plan of reorganization (the "Third Plan").

12.      The Third Plan resulted in the cancellation of the June 10, 2015 hearing, as the Secured Creditor Objection to the Second Plan and the UST Limited Objection to the Second Plan were now moot.

13.      On June 15, 2015, Nnika E. White ("White"), filed a motion in her capacity as legal counsel requesting that she substitute herself as attorney of record for the Individual Debtors (the "White Motion").

14.      The White Motion was granted by entry of an Order on July 8, 2015, and the Individual Case proceeded with only White as counsel of record.

15.      On July 17, 2015, the UST filed its objection to the Third Plan (the "UST Objection to the Third Plan"), the same being set for a hearing on July 22, 2015.

16.      The July 22, 2015 hearing on the UST's Objection to the Third Plan was continued to September 2, 2015.

17.     The September 2, 2015 hearing on the UST's Objection to the Third Plan was continued a second time to October 14, 2015.

18.     On October 13, 2015, White filed the Individual Debtors fourth Chapter 13 Plan of reorganization (the "Fourth Plan").

19.     The October 14, 2015 hearing on the UST's Objection to the Third Plan was heard. Neither the Individual Debtors nor White appeared (or any other counsel on their behalf). At the conclusion of the hearing, the Court, *sua sponte*, ordered White to show cause why she should not be sanctioned for violations of the Bankruptcy Code and Bankruptcy Rules.

20.     The Order to Show Cause was entered on October 20, 2015, and set for a hearing on November 4, 2015.

21.     Also on October 20, 2015, the chapter 13 trustee filed her motion to convert the Individual Debtors' case from a case under chapter 13 to one under chapter 7 of the Bankruptcy Code (the "Motion to Convert").

22.     On October 29, 2015, White filed the Individual Debtors fifth Chapter 13 Plan of reorganization (the "Fifth Plan").

23.     On November 4, 2015, a hearing was held on the Order to Show Cause and the Motion to the Convert, at the conclusion of which the Court took the matters under advisement.

24.     On November 5, 2015, the Court entered an order granting the Motion to Convert.

25.     On November 5, 2015, Bruce H. Matson was appointed Chapter 7 trustee of the Individual Case (the "Individual Trustee").

26.     Among the assets of the Individual Debtors' estate is 100 percent ownership of the PLLC.

27.      The Individual Trustee, on December 2, 2015, moved this Court for the authority

to initiate a voluntary chapter 7 proceeding for the PLLC (the "Authority Motion").

28.      The Individual Trustee also filed a motion to expedite (the "Motion to Expedite")

the hearing for the Authority Motion, which hearing was set for December 3, 2015 at 2:00 PM.

29.      At the hearing convened on December 3, 2015, the Motion to Expedite was

granted, and the Court heard the Authority Motion.

30.      On information and belief, during the course of the December 3, 2015 hearing,

White did testify under the penalty of perjury that she had not removed any of the Corporate

Property from the PLLC other than pictures of her children.

31.      At the conclusion of the hearing, the Court granted the Individual Trustee the

authority sought in the Authority Motion.

32.      At 4:47 PM on December 3, 2015, the Individual Trustee filed a voluntary

petition for relief pursuant to Chapter 7 of the Bankruptcy Code (the "Corporate Case").

33.      Lynn L. Tavenner thereafter was appointed interim Trustee of the Corporate Case,

and she continues to serve in that capacity.

34.      On the morning of December 4, 2015, the Trustee , with counsel, appeared at the

offices of the Corporate Debtor, located at 9101 Midlothian Turnpike, Suite 800, N. Chesterfield,

VA 23235 (the "Corporate Offices").

35.      The Trustee was met at the Corporate Offices by a locksmith and forensic

computer professional, both of whom are ready, willing, and able to testify.

36.     The locksmith had arrived before the Trustee, and related to the Trustee that a woman matching a description of White had exited the Corporate Offices and approached him to inquire about his presence in the parking lot.

37.     Upon learning that the locksmith was waiting for the Trustee, White reentered the Corporate Offices.

38.     The locksmith heard the sound of equipment being moved and witnessed White and a person matching the description of the PLLC's intern separately exit the property carrying items from the Corporate Offices.

39.     A male matching the description of White's spouse, the other Individual Debtor, was seen leaving the rear of the Corporate Offices carrying items from the Corporate Offices.

40.     Immediately upon entering the Corporate Offices, the Trustee found at the receptionist station a computer resting on top of a desk with its hard drive missing, no monitor, no papers, pencils, pens, or any other supplies one would expect in the front office of a law firm.

41.     The Trustee proceeded to move from room to room within the Corporate Offices and was met with similar scenes: computers were either missing or left on the floor with parts displaced and in some instances hard drives removed; desks were emptied of all supplies; one office server was missing; at least one office safe had been removed; certain physical client files had been removed from the Corporate Offices; televisions had been removed from the walls, in essence, someone had raided the Corporate Offices and removed any Corporate Property of value.

42.     White's personal office was completely devoid of any Corporate Property that one could reasonably assume had been used in the exercise of the corporate business.

43.    Certain pictures of the Corporate Offices taken on December 4, 2015, in conjunction with the Trustee's examination of the Corporate Offices are attached hereto as Exhibit A.

44.    Following consultation with the UST, the Trustee contacted two former employees of the Corporate Debtor, both of whom are ready, willing, and able to testify. The former employees came to the Corporate Offices to assist the Trustee in securing and preserving assets of the Corporate Debtor's estate.

45.    With the assistance of these former employees, the Trustee was able to move from room to room within the Corporate Offices, looking for the client files, and other of the Corporate Debtor's property, and ascertaining that many items had been removed.

46.    The Trustee found a bin used in conjunction with a paper shredder that looked as though it had recently been emptied.

47.    Within another bin used in conjunction with a paper shredder, the Trustee found a redwell containing significant information related to a case of a client of the Corporate Debtor that had recently been converted from a case under Chapter 13 to a case under Chapter 7 for bad faith. The Trustee secured the file.

48.    During the course of the day, the Trustee, her agents, and/or clients who had arrived at the Corporate Offices witnessed White approach in a vehicle several times, and quickly drive away.

49.    Upon information and belief, White met on December 4, 2015, with a client of the Corporate Debtor at a location other than the Corporate Offices, and gave him his client file (or at least a portion of the same).

50.     Upon information and belief, White met another bankruptcy attorney on December 4, 2015, at a location other than the Corporate Offices, and gave her a client file (or at least a portion of the same).

51.     The Trustee learned, from the UST, a review of the Corporate Debtors' docket, and documents in the Corporate Offices, that the Corporate Debtor had several bank accounts at Wells Fargo Bank, N.A.

52.     After securing the premises and documenting the state of the Corporate Offices, the Trustee promptly visited a branch of Wells Fargo Bank, N.A.

53.     The Trustee was shown bank records for each of the Corporate Debtor's accounts. Each account had been drained of all funds and closed on December 2, 2015.

54.     Upon information and belief, White, after the filing of the Authority Motion, with the actual knowledge and notice that the Individual Trustee sought to file the Corporate Case, proceeded directly to a Wells Fargo Bank, N.A. branch and emptied the Corporate Debtor's bank accounts.

55.     Upon information and belief, one or both of the Individual Debtors left the hearing on the Authority Motion, having heard this Court's ruling on said motion with actual knowledge that the Individual Trustee would promptly file the Corporate Case, and went to the Corporate Offices where they willfully and maliciously systematically attempted to cover their tracks by removing the entirety of the Corporate Property.

56.     On December 4, 2015, the Trustee filed an Application to Employ Tavenner & Beran as Trustee's Counsel in the Corporate Case (the "Corporate Debtor Trustee Employment Application").

57.     On December 4, 2015, the Trustee, with the help of the former employees, modified the voice mail message of the Corporate Debtor's telephone line to direct all client inquiries to the law firm of Tavenner and Beran, PLC.

58.     Upon information and belief, White contacted former employees of the Corporate Debtor during the weekend of December 5 and 6, 2015, seeking passwords to email accounts.

59.     Upon information and belief, during the weekend of December 5 and 6, 2015, White forwarded the Corporate Debtor's telephone line to a cell phone and/or another phone over which she maintains control.

60.     Upon information and belief, during the weekend of December 5 and 6, 2015, White caused the webpage of the Corporate Debtor to direct all client inquiries to a cell phone. See Exhibit B, attached hereto.

61.     Upon information and belief, White sent information related to clients of the Corporate Debtor to one or more attorneys on December 7, 2015.

**Relief Requested**

62.     Upon information and belief, the Individual Debtors are in possession of Corporate Property, including but not limited to: computers, and/or other electronic devices, storage media, and/or client files that are property of the Corporate Estate and/or contain valuable recorded information about the Corporate Property and/or financial affairs. The Trustee seeks to gain control and/or access to all Corporate Property and to protect and preserve said property for the benefit of the Corporate Estate.

63.     During the course of the Individual Debtors' bankruptcy case, White has displayed a history of: a) dishonesty; b) self dealing, pre- and post-petition; c) mismanagement of the PLLC; d)

breaches of fiduciary duty to the PLLC; and, e) other documented instances of bad faith, for which

the Individual Debtors' case was converted from a case under Chapter 13 to one under Chapter 7 of

the Bankruptcy Code.

64.     Notwithstanding the same, the Trustee gave the Individual Debtors the benefit of the

doubt, and hoped that both would act in the Corporate Case pursuant to the Bankruptcy Code and

Bankruptcy Rules. The Individual Debtors have failed in the Corporate Case to act in accordance

with the Bankruptcy Code and Bankruptcy Rules. While White is the sole owner of the PLLC and

Mr. White is not, nor has he ever been, an attorney (with additional duties and obligations as

required by such role), he was an employee of the Corporate Debtor and had access to the

Corporate Property.

65.     To the extent that the Corporate Property contains data unrelated to the Corporate

Debtor, the Trustee will consent to the entry of a protective order addressing the non-disclosure

of such information.

66.     The Corporate Property also undoubtedly contains information relating to current

and former clients of the Corporate Debtor. It is imperative that the Trustee have access to any

and all client files so that she might assist those clients in obtaining new representation in their

legal matters.

Given the nature of the items requested and the past conduct of the Individual Debtors, it is

imperative that the Trustee obtain an ex parte order for injunctive relief/temporary restraining

order: (a) compelling the Individual Debtors to turn over the Corporate Property; (b) providing

that the Corporate Property must be immediately returned, protecting, and preserving said

Corporate Property for the benefit of the Corporate Estate; (c) enjoining the Individual Debtors

from exercising any possession, dominion, and/or control in any fashion over any Corporate

Property; and/or (d) enjoining the Individual Debtors from taking any action that would

adversely impact the clients of the Corporate Debtor.

## **Legal Authority**

### Turnover of Property of the Estate Pursuant to § 542

67.     Pursuant to § 542(a) of the Bankruptcy Code, "an entity, other than a custodian, in

possession, custody, or control, during the case, of property that the trustee may use, sell, or lease

under section 363 of this title . . . shall deliver to the trustee, and account for, such property or

the value of such property." 11 U.S.C. § 542(a).

68.     Additionally, pursuant to § 542(e) of the Bankruptcy Code, this Court may order

one who "holds recorded information, including books, documents, records, and papers, relating

to the debtor's property or financial affairs, to turn over or disclose such recorded information to

the trustee." 11 U.S.C. § 542(e).

69.     Upon information and belief, the Individual Debtors have in their possession

computers, servers, hard drives, and other files that are property of the Corporate Debtor's Estate

and/or contain recorded information relating to the Corporate Debtor's property and/or financial

affairs.

70.     Given the nature of the Individual Debtors conduct, an order compelling turnover

is warranted.

### Temporary Injunction and/or Temporary Restraining Order

71.     The Court possesses the equitable power to grant the requested relief on an ex

parte basis pursuant to § 105. Congress expressly contemplated that a bankruptcy court should

issue a § 105 injunction when an action was harming the estate. *See* S. Rep. No. 95-989, at 51

(1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5837; H. R. Rep. No. 95-595, at 342 (1977),

reprinted in 1978 U.S.C.C.A.N. 5963, 6298.

72.     The standard governing the issuance of preliminary injunctive relief in the Fourth

Circuit requires that the plaintiff make a *clear showing* that:

(1) she is likely to succeed on the merits;
(2) she is likely to suffer irreparable harm in the absence of preliminary relief;
(3) the balance of equities tips in her favor; and,
(4) an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama,*

*Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir. 2009), *vacated on other grounds by*

559 U.S. 1089 (2010), *reissued in part by* 607 F.3d 355 (4th Cir. 2010) (overruling *Blackwelder*

*Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977)).

73.     The requested injunction is warranted under the *Winter* analysis in that the

behavior of the Individual Debtors demonstrate that the Trustee will succeed on the merits of her

complaint.

74.     The Corporate Estate will suffer irreparable harm without the protection of the

injunction. Without the injunction, the Individual Debtors will be allowed to dispose of the

Corporate Property and/or damage it such that the Trustee is unable to administer the Estate.

75.     Without the injunction, the Individual Debtors will continue to cause harm to the

Corporate Debtor's estate through using, reducing, diminishing, disposing, and/or concealing

assets of the Corporate Debtor's estate that could otherwise be available for the benefit of all

creditors and parties-in-interest.

76.     Given the easily disposable nature of the Corporate Property and, specifically, the information contained thereon, as well as the past conduct of White, the Trustee believes that White will take further steps to conceal and/or dispose of assets belonging to and/or information pertaining to the Corporate Debtor's estate; therefore, justifying the Trustee's need for ex parte relief.

77.     The Individual Debtors' continued usage and concealment of the Corporate Property, including the computers and storage Media, as well as information stored on them, poses a threat of irreparable harm to the Corporate Debtor. Given the easily disposable nature of the information contained on the computers, servers, and hard drives, each day that passes increases the risk that such information will be permanently lost through either everyday usage or even purposeful concealment and/or disposal.

78.     The balance of the equities are in favor of the Trustee.

79.     By sharp contrast, the Individual Debtors would face, at most, minimal harm, if any, as a result of the injunction. The Trustee believes that the Individual Debtors will not suffer any harm since the Corporate Property removed from the Corporate Offices is property of the Corporate Debtor's estate. Additionally, to the extent that the Corporate Property contains data unrelated to the Corporate Debtor, the Trustee will consent to the entry of a protective order addressing the non-disclosure of such information.

80.     The Trustee has established that the Individual Debtor's actions justify the relief sought.

81.     The facts asserted in this Motion and the Complaint demonstrate that the Trustee will prevail in this litigation. At the very least, the Individual Debtor's are required to turn over the Corporate Property to the Trustee pursuant to 11 U.S.C. § 542(e).

82.     The Individual Debtors continued concealment and/or diminution of assets of the Corporate Debtor's estate will cause harm the bankruptcy estate's creditors and parties in interest. Accordingly, the public interest is best served by issuing the injunction to compel the Individual Debtor's to turn over the Corporate Property.

**WHEREFORE**, the Trustee prays that this Court enter a fourteen-day Order: (A) enjoining the Individual Debtors from using and/or disposing any Corporate Property; (B) enjoining the Individual Debtors from discarding and/or concealing any information contained in the Corporate Property; (C) compelling the Individual Debtors to turn over to the Trustee the Corporate Property; (D) enjoining the Individual Debtors from communicating with, meeting with, or otherwise having anything to do with any client of the PLLC; and, (E) for such other relief as may be proper.

LYNN L. TAVENNER, TRUSTEE

Dated: December 7, 2015                    By:____/s/ Paula S. Beran_____
                                           Paula S. Beran

Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-0178

*Counsel for Lynn L. Tavenner, Trustee*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December 2015, a true copy of the foregoing Motion for Ex Parte Relief/Temporary Restraining Order and Memorandum in Support was delivered via hand delivery to:

Robert B. Van Arsdale, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219-1885

Bruce H. Matson
LeClair Ryan, A Professional Corporation
919 East Main Street, 24th Floor
Post Office Box 2499
Richmond, VA 23218-2499

Lynn L. Tavenner, Chapter 7 Trustee
20 North 8th Street
Richmond, Virginia 23219

/s/ Paula S. Beran
        Paula S. Beran

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:   **THE LAW OFFICES OF WHITE &**<br>**ASSOCIATES, PLLC,**<br>Debtor | Case No.<br>15-36223-KRH |
| **LYNN L. TAVENNER, TRUSTEE,**<br>Plaintiff | Chapter<br>7<br>Adv. Proc No. |
| **MARK F. WHITE,**<br>**NNIKA E. WHITE,**<br>Defendants | |

## CERTIFICATION OF PAULA S. BERAN FOR THE
## MOTION FOR EX PARTE RELIEF/TEMPORARY
## RESTRAINING ORDER

     Lynn L. Tavenner, Trustee (the "Trustee"), the Chapter 7 Trustee in the above

captioned cases has filed the Trustee's Motion for Ex Parte Relief/Temporary Restraining Order.

In support thereof, as required by Bankruptcy Rule 7065, I, Paula S. Beran, as counsel for the

Trustee, hereby certify the following:

     1.     I am a member of the Bar of this Court; and,

     2.     Given the actions of the Individual Debtors during the Individual Case and

between December 3rd through 7th, 2015, I believe that immediate and irreparable harm will

befall the Corporate Estate if additional notice is given to the Individual Debtors.

_____
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*

3.      I verify under penalty of perjury under the laws of the United States of America

and the Commonwealth of Virginia that the foregoing is true and correct.

Dated: December 7, 2015

_____/s/ Paula S. Beran_____

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of December, 2015 a true and correct copy of the

Certification for the Trustee's Motion for Ex Parte Relief/Temporary Restraining Order was

served by electronic delivery and/or hand delivery to the Office of the United States Trustee and

to Lynn L. Tavenner, Trustee.

_____/s/ Paula S. Beran_____

*Paula S. Beran*

Exhibit A



Exhibit A



Exhibit A



Exhibit A





Exhibit A

Exhibit A



Exhibit A



Exhibit A



Exhibit A





Exhibit A



Exhibit A

Exhibit A



Exhibit A



Exhibit A







Exhibit A



Exhibit A



Exhibit A



Exhibit A



Exhibit B

The Law Office Of White
& Associates

The Law Firm you can Trust

| Home +  |



HOME ⌄

 Law Office of White and Associates is no longer open
for business.

Any questions regarding open cases please contact
Nnika White at 804-274-9002.

*The information on this website should NOT be considered legal advice and
receipt or viewing of this information does not constitute an attorney-client
relationship.*

*The information on this website is for informational purposes only. Nothing on
this site or on the accompanying pages herewith, in connection with
documents, comments, answers, emails, or other communications should be
taken as legal advice for any individual case or situation.*

*This information is not intended to create, and receipt of it does not constitute,
an attorney-client relationship. DO NOT act upon this information without
seeking professional counsel.  To obtain legal counsel or legal services from
White and Associates PC, you must first establish an attorney-client
relationship with one of the lawyers in our office.  Until you do so and receive a
contract signed by counsel, you have not hired an attorney and have not
become a client of the firm.*

*This website is not intended to be a source for legal advice, and you should not
rely on any information provided in this website as such. Readers should not*

The information provided should not be an invitation for an attorney-client relationship, and should always seek the advice of competent counsel.  White and Associates may provide links to third party websites as a convenience.  The inclusion of any link does not imply endorsement by White and Associates.

Except as expressly provided herein, White and Associates PC does not grant you any express or implied rights to the information or content provided on this website.

.

Home

9101 Midlothian Turnpike Suite 800 Richmond, VA 23235 Phone (804) 377-9431 Fax 804-377-9434